MATTHEW D. POWERS (Bar No. 104795)
Matthew.Powers@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 360
Redwood Shores, CA 94065
Telephone:  650-802-6000
Facsimile: 650-802-6001

ROBERT D. FRAM (Bar No. 126750)
rfram@cov.com
SAMUEL F. ERNST (Bar No. 223963)
sernst@cov.com
DANIELLE L. GOLDSTEIN (Bar No. 257486)
dgoldstein@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Telephone:  (415) 591-6000
Facsimile:  (415) 591-6091

*Attorneys for Plaintiffs*
*Apple Inc. and Apple Sales International*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC. and APPLE SALES INTERNATIONAL,<br><br>    Plaintiffs,<br><br>v.<br><br>MOTOROLA MOBILITY, INC.<br><br>    Defendant. | Civil Case No.:  3:12cv00355 JLS (BLM)<br><br><br>**FIRST AMENDED COMPLAINT** |

**PUBLIC/REDACTED VERSION**

**COMPLAINT**

Plaintiffs Apple Inc. and Apple Sales International (collectively, "Apple"), for their First Amended Complaint against Motorola Mobility, Inc. ("Motorola"), allege and state as follows:

**PARTIES**

1.     Plaintiff Apple Inc. is a California corporation having its principal place of business at 1 Infinite Loop, Cupertino, California, 95014.

2.     Plaintiff Apple Sales International is an unlimited company organized under the laws of the Republic of Ireland having its principal place of business at Hollyhill Industrial Estate, Hollyhill, Cork, Republic of Ireland.

3.     On information and belief, Motorola Mobility, Inc. is a wholly-owned subsidiary of Motorola, Inc. organized under the laws of Delaware with its principal place of business at 600 North U.S. Highway 45, Libertyville, Illinois 60048.

**JURISDICTION AND VENUE**

4.     This action arises under Title 35 of the United States Code.  The Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, 2201, and 2202.  This Court also has diversity jurisdiction over each of the claims under 28 U.S.C. § 1332(a) in that this is a civil action between diverse parties where the amount in controversy exceeds the sum or value of $75,000.

5.     This Court has personal jurisdiction over Motorola under California Code of Civil Procedure § 410.10.

6.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and pursuant to [REDACTED].

**I.     NATURE OF THE ACTION**

7.     This is a lawsuit asserting claims for breach of contract, declaratory, and injunctive relief related to Motorola's European Patent No 1 010 336 ("the '336 patent"), the equivalent U.S. Patent No. 6,359,898 ("the '898 patent"), and Motorola's other declared cellular standards-

1

essential patents.  Motorola sued Apple in Germany, claiming infringement of the '336 patent based on Apple's use of Qualcomm components in Apple's iPhone 4S product.  Motorola's German lawsuit was in direct breach of a license agreement between Motorola and Qualcomm, in which Motorola [REDACTED].  As a Qualcomm customer, Apple is a third-party beneficiary of that contract.  Moreover, under this same contract, Motorola's rights under the '336 patent, the '898 patent, and Motorola's other declared cellular standards-essential patents are exhausted.  The Higher Regional Court of Karlsruhe in Germany has determined that Apple has made a valid "Orange Book" offer for a license to the German patent rights.[1]  Under German law, this means that Motorola cannot refuse Apple's offer and remain in compliance with German antitrust law.  Accordingly, given the requirements of German law and the ruling of the Higher Regional Court of Karlsruhe, the question of liability is no longer an issue in Germany, although the parties will continue to litigate the amount of damages Apple must pay Motorola for the past infringement Motorola alleges and the amount of a FRAND license.[2]  Motorola, however, has refused to stipulate that it will not accuse Apple of infringing its declared cellular-essential patents based on the use of Qualcomm components in countries other than Germany.  Accordingly, Apple brings this suit for breach of contract, declaratory, and injunctive relief, and asks this Court to enjoin Motorola from prosecuting and enforcing claims against Apple based on Apple's use of Qualcomm chips anywhere in the world outside of Germany.

---

[1] The Orange Book defense is unique to German law.  It refers to a procedure whereby a defendant accused of infringing a declared standards-essential patent can make an offer to license the patent.  The plaintiff may not reject the offer where, as here, the offered terms are such that rejection would constitute a violation of Germany's antitrust laws.  The royalty rate demanded by Motorola in Germany is not what Apple considers an appropriate FRAND royalty rate, and the amount of the royalty will continue to be litigated in Germany.

[2] The Higher Regional Court of Karlsruhe ruled that Motorola must accept Apple's license offer in Germany or be in violation of German antitrust law.  On the basis that this ruling requires Motorola to grant Apple a license to the relevant patents in Germany, Apple submits this First Amended Complaint, which expressly does not seek declaratory relief regarding Apple's right to use Qualcomm components in Germany, injunctive relief prohibiting Motorola from continuing to litigate its claims in Germany, or breach of contract remedies for Motorola's wrongful prosecution of infringement claims against Apple in Germany.

FIRST AMENDED COMPLAINT;
CASE NO. 3:12cv00355 JLS (BLM)

## II.    MOTOROLA'S LICENSE AGREEMENT WITH QUALCOMM

8.    Under a license agreement between Qualcomm and Motorola and amendments to that agreement, Motorola has [REDACTED].

9.    Specifically, Qualcomm and Motorola are parties to a Patent License Agreement that was originally entered into in 1990 ("1990 PLA").  On information and belief, this agreement was assigned to Motorola Mobility, Inc. by Motorola, Inc.

10.    [REDACTED].

11.    [REDACTED].

12.    [REDACTED]

13.    [REDACTED]

14.    [REDACTED]

15.    [REDACTED]

16.    [REDACTED]

17.    [REDACTED]

18.    [REDACTED]

19.    [REDACTED]

20.    [REDACTED]

21.    [REDACTED]

## III.    THE QUALCOMM COMPONENTS SUPPLIED FOR INCORPORATION INTO APPLE PRODUCTS ARE LICENSED BY MOTOROLA

22.    Qualcomm CDMA Technologies Asia-Pacific Pte. Ld. ("QCTAP"), which is a wholly-owned subsidiary of Qualcomm Incorporated, now sells the MDM6610 baseband processors to Apple's contract manufacturers, and those components are incorporated into Apple's CDMA2000-compliant iPhone 4S.  Apple also incorporates Qualcomm chips into its New iPad product.  Apple, therefore, is an indirect customer of Qualcomm [REDACTED].

23.    The MDM6610 supplied by Qualcomm enables such devices to communicate via cellular networks using various standards, including the UMTS and GPRS standards at issue here. [REDACTED].

FIRST AMENDED COMPLAINT;
CASE NO. 3:12cv00355 JLS (BLM)

24.     [REDACTED].   Indeed, Qualcomm has informed Apple that Qualcomm has already paid Motorola for the licenses and covenants for Qualcomm and its customers, including Apple.

25.     [REDACTED].

### MOTOROLA'S LITIGATION AGAINST APPLE ON DECLARED STANDARD ESSENTIAL PATENTS

#### A.     Motorola's Breach of its FRAND Promise

26.     Motorola has declared to the European Telecommunications Standards Institute ("ETSI") that the '898 patent is essential to practicing ETSI's GPRS standard.  Motorola also committed to license its patent on fair, reasonable, and non-discriminatory ("FRAND") terms.

27.     A promise to license under fair, reasonable, and nondiscriminatory terms is the quid pro quo that standards setting participants extend to the industry in return for the right to collaborate with competitors in creating a standard that has the power to block market access. Apple believes that parties who commit to license their standards essential patents on FRAND terms have obligations they cannot ignore, evade, or apply only prospectively after an abuse has occurred.

28.     Apple's position on FRAND licensing is long standing.  When Apple makes a promise to license its standards essential patents under FRAND terms, Apple will not waver. Apple will keep its commitment and, should it transfer any such patents to a third party, will take best efforts to ensure that the third party adheres to Apple's FRAND obligations.  If parties are interested in licensing these patents, Apple will offer to make the patents available on FRAND terms, as long as those terms are reciprocal, and will do so without requiring others to license back to Apple anything more than their similarly held standards essential patents.  Apple also commits not to seek an injunction or exclusion order on the basis of its standards essential patents that are subject to a FRAND licensing commitment.  Despite owning scores of standards essential patents, Apple has never asserted a standard essential patent in litigation and, therefore—unlike some in the technology industry—has never used a patent subject to a FRAND commitment to deny market access to a rival.

29. Apple went a step further in November 2011 when it clarified its FRAND commitment to ETSI on cellular standards essential patents. In its letter, Apple emphasized that seeking injunctive relief is inconsistent with a FRAND licensing obligation and went on to propose a reciprocal framework for calculating FRAND that emphasizes an appropriate royalty rate and a common base as a way to bring meaning to a concept that has been too long abused.

30. Motorola, on the other hand, has pursued an aggressive international campaign of litigation that flies in the face of its promise to license its cellular standards essential patents on FRAND terms.

**B.      The  German Proceedings**

31. On April 1, 2011, Motorola Mobility, Inc. sued Apple Sales International in case number 7 O 122/11 in the District Court of Mannheim in the Federal Republic of Germany ("the ASI Mannheim Action") alleging, among other things, that Apple Sales International infringes the '336 patent.

32. Motorola alleges in the ASI Mannheim Action that it is not possible to practice the European Telecommunications Standards Institute's ("ETSI's") GPRS standard, a cellular standard, without infringing the '336 patent—in other words, that the '336 patent is essential to that standard. Motorola contends that certain Apple mobile communications devices infringe the '336 patent because they are compliant with the GPRS standard.

33. Motorola did not name the Apple iPhone 4S as an accused product in its complaint in the ASI Mannheim Action. The iPhone 4S was not on sale in Germany at the time that Motorola filed its complaint.

34. On December 9, 2011, the District Court of Mannheim ordered Apple Sales International to cease and desist selling products that it found infringe the '336 patent. The District Court also ordered Apple Sales International to perform an accounting and pay the costs of the lawsuit, and to pay damages, the amount of which are to be determined.

35. Apple Sales International immediately appealed the order of the Mannheim District Court to the Higher Regional Court of Karlsruhe. Apple Sales International also immediately filed a Request for Suspension of the Mannheim District Court's Order.

FIRST AMENDED COMPLAINT;
CASE NO. 3:12CV00355 JLS (BLM)

36. In response, Motorola for the first time in a brief submitted to the Higher Regional Court of Karlsruhe on January 12, 2012, made the assertion that Apple's iPhone 4S was subject to the Mannheim District Court's cease and desist order.  The Apple iPhone 4S had not been named in the complaint.

37. Motorola alleged that Apple infringes the '336 patent based on Apple's use of a MDM 6610 baseband chip in the iPhone 4S, which is provided to Apple's contract manufacturers by Qualcomm Inc. ("Qualcomm").  Motorola alleges that because the MDM 6610 baseband chip is compliant with GPRS standards issued by ETSI, and because Motorola has declared to ETSI that the '336 patent is essential to GPRS standards, the Apple iPhone 4S infringes the '336 patent by virtue of incorporating the Qualcomm MDM 6610 chip.

[REDACTED]

38. On January 23, 2012, the Higher Regional Court of Karlsruhe initially declined to stay the Mannheim District Court's cease and desist order in response to Apple Sales International's Request for Suspension, based in part on the fact that the Court did not have access to the confidential license agreements between Motorola and Qualcomm.

39. On February 2, 2012 the Higher Regional Court provisionally suspended enforcement of the injunction.

40. After receiving further briefing, on February 27, 2012, the Higher Regional Court issued an order again suspending enforcement of the injunction.  The Court ruled that Apple's appeal is likely to be successful in light of the fact that Apple had offered to license Motorola's patents on terms that Motorola could not refuse without abusing its dominant market position, obtained by virtue of declaring its patent essential to cellular standards.

41. Apple Sales International's Appeal of the District Court's Order is pending, and is not expected to be resolved until the end of 2012.

42. On April 26, 2011, Motorola Mobility, Inc. sued Apple Inc. for patent infringement in case number 7 O 169/11 in the District Court of Mannheim alleging that Apple Inc. infringes the '336 patent.

FIRST AMENDED COMPLAINT;
CASE NO. 3:12CV00355 JLS (BLM)

43.     Motorola is attempting to accuse the iPhone 4S in the Apple Inc. Mannheim proceeding as well.

44.     The Mannheim District Court held a hearing on the merits on February 3, 2012.  A judgment will be entered on April 13, 2012.

45.      Apple has made an offer to license Motorola's declared cellular standards-essential patents from Motorola for the purpose of selling products in Germany.  In light of Motorola's obligation to license these patents on FRAND terms, the Higher Regional Court of Karlsruhe has determined that Motorola must accept Apple's licensing terms or be in violation of German antitrust law.  Accordingly, given the requirements of German law and the ruling of the Higher Regional Court of Karlsruhe, the question of liability is no longer an issue in Germany, although the parties will continue to litigate the amount of damages Apple must pay Motorola for the past infringement Motorola alleges and the amount of a FRAND license.

**C.      Motorola's Threats to Sue Apple for Infringement Outside of Germany**

46.     In *Apple Inc. v. Motorola, Inc., et al.* case number 1:11-cv-08540 pending before the United States District Court for the Northern District of Illinois, Motorola accuses Apple of infringing the '898 patent.  This case was filed on October 29, 2010 in the Western District of Wisconsin, case no. 3:10-cv-662, and was transferred to the Northern District of Illinois from that court on December 1, 2011.

47.     Motorola has not attempted to accuse the Apple iPhone 4S or the new iPad products of infringing the '898 patent and has not accused Apple of patent infringement based on Apple's use of Qualcomm's MDM 6610 baseband chip or other Qualcomm components in the iPhone 4S, the new iPad, or other Apple products.

48.     On February 27, 2012, Motorola and Apple entered into an agreement "not to accuse any additional or new products of infringement of any patents-in-suit (and not to seek an injunction in this case for any such additional or new products) that were not accused of infringement in the original expert disclosures in this case."  Apple's iPhone 4S was not accused of infringement by Motorola in the expert disclosures in the Illinois case.

FIRST AMENDED COMPLAINT;
CASE NO. 3:12CV00355 JLS (BLM)

49.      However, in this agreement "[b]oth parties retain all rights to file separate actions on any additional or new products and seek any relief (including injunctive relief) in any other action. This agreement only relates to adding products to case - No. 1:11-cv-08540."

50.      Moreover, on January 23, 2012, Motorola filed a brief in the Higher District Court of Karlsruhe in the Federal Republic of Germany indicating that it may seek to accuse the Apple iPhone 4S of infringement of the '898 patent in the United States. Motorola stated as follows:

> "Also the further assertions with regard to the iPhone 4S are inaccurate. There is no strategy in place not to challenge these products. The fact that the Plaintiff has not yet challenged the 4S in Wisconsin has tactical reasons of a procedural nature, which the Plaintiff naturally will not expose to the Defendant."

51.      On March 27, 2012, counsel for Apple asked counsel for Motorola to enter into a stipulation not to sue Apple for infringement of its declared standards-essential patents in any forum outside of Germany. Motorola refused to enter into such a stipulation.

## IV.      MOTOROLA'S INEFFECTIVE ATTEMPT TO TERMINATE APPLE'S RIGHT TO USE THE QUALCOMM COMPONENTS

52.      [REDACTED]

53.      On January 11, 2011, Mr. Kirk Dailey, Motorola's Corporate Vice President, Intellectual Property, sent a letter to Qualcomm, copying Apple, purporting "to terminate any and all license and covenant rights with respect to Apple, effective February 10, 2011 (30 days from the date of this letter)." In doing so, Motorola claimed to invoke [REDACTED].

54.      Apple has not asserted any of its Customer Essential Patents against Motorola and did not first assert any of its patents against Motorola. It was Motorola who first sued Apple for patent infringement on October 6, 2010 in the United States District Courts for the Northern District of Illinois, the Southern District of Florida, and in the International Trade Commission. [REDACTED].

55.      [REDACTED].

FIRST AMENDED COMPLAINT;
CASE NO. 3:12CV00355 JLS (BLM)

**COUNT ONE**

**(BREACH OF CONTRACT TO WHICH APPLE IS A THIRD PARTY BENEFICIARY)**

56.     Apple incorporates paragraphs 1-55 as if fully set forth herein.

57.     As a Qualcomm customer, Apple is an intended third party beneficiary to the Qualcomm/Motorola agreement wherein Motorola covenanted not to sue Qualcomm customers licensed under certain Motorola patents, including the '336 patent, based on the use of Qualcomm components.

58.     Motorola has breached its obligations under the licenses to Qualcomm and [REDACTED] by alleging in Germany that Apple infringes the '336 patent by virtue of incorporating the Qualcomm MDM6610 baseband processor into Apple's iPhone 4S.  Although Apple has now proposed a license agreement to Motorola for Apple products sold in Germany that the Higher Regional Court has ruled Motorola must accept, Motorola has further breached its contract and covenant not to sue by refusing to commit that it will not sue Apple in any jurisdiction outside of Germany for infringement of Motorola's standards-essential patents based on Apple's use of Qualcomm components.

59.     As an intended third-party beneficiary of the agreement, Apple may bring suit for this breach.

60.     Apple has incurred and will continue to incur harm as the result of Motorola's breach of contract.  As Apple had expected to use the Qualcomm chips free of litigation costs, Apple's expectation damages are the cost of defending itself in any litigation against Motorola. Apple will also incur consequential damages, including loss of profits, loss of customers, loss of goodwill and product image, and uncertainty among customers and potential customers should any Court enjoin Apple from selling its products incorporating Qualcomm chips.  Though the total amount of such damages cannot currently be quantified with specificity, Apple's total expectation and consequential damages exceed $75,000.

FIRST AMENDED COMPLAINT;
CASE NO. 3:12CV00355 JLS (BLM)

## COUNT TWO
### (DECLARATORY JUDGMENT THAT APPLE IS AUTHORIZED TO USE QUALCOMM COMPONENTS UNDER A COVENANT NOT TO SUE)

61.    Apple incorporates paragraphs 1-60 as if fully set forth herein.

62.    An actual and justiciable controversy exists between Apple and Motorola with respect to whether Apple is authorized to use Qualcomm components, including but not limited to the MDM6610 Qualcomm chip, in its products, including but not limited to the iPhone 4S, the new iPad, and any other Apple product, outside of Germany.  This is based, *inter alia*, on (1) Motorola's ineffective attempt to terminate Apple's right to use Qualcomm components; (2) Motorola's statements in German proceedings that "[t]here is no strategy in place not to challenge [the iPhone 4S].  The fact that the Plaintiff has not yet challenged the 4S in Wisconsin has tactical reasons of a procedural nature, which the Plaintiff naturally will not expose to the Defendant."; and (3) Motorola's refusal to stipulate that it will not sue Apple for infringement based on Apple's use of the Qualcomm components outside of Germany.

63.    Absent a declaration that Apple is authorized to use Qualcomm components licensed under Motorola patents outside of Germany, Motorola will continue to wrongfully threaten to assert its patents against Apple's iPhone 4S, the new iPad, and other Apple products, and thereby cause Apple irreparable harm and injury.  The object of this litigation—Apple's ability to continue selling the iPhone 4S, the new iPad, and other Apple products worldwide—exceeds $75,000 in value to Apple.

64.    Apple is authorized to use Qualcomm's MDM6610 baseband processor and other Qualcomm components licensed under Motorola's patents outside of Germany and is entitled to a declaration to that effect.

65.    This is an exceptional case entitling Apple to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNT THREE
### (DECLARATORY JUDGMENT THAT MOTOROLA'S PATENT RIGHTS ARE EXHAUSTED)

66.    Apple incorporates paragraphs 1-65 as if fully set forth herein.

10

67.     An actual and justiciable controversy exists between Apple and Motorola with respect to whether Motorola's patent rights in the MDM6610 Qualcomm chip and other Qualcomm components licensed under Motorola patents are exhausted outside of Germany.  This is based, *inter alia*, on (1) Motorola's ineffective attempt to terminate Apple's right to use Qualcomm components; (2) Motorola's statements in German proceedings that "[t]here is no strategy in place not to challenge [the iPhone 4S].  The fact that the Plaintiff has not yet challenged the 4S in Wisconsin has tactical reasons of a procedural nature, which the Plaintiff naturally will not expose to the Defendant."; and (3) Motorola's refusal to commit that it will not sue Apple for infringement based on Apple's use of the Qualcomm components outside of Germany.

68.     Absent a declaration that Motorola's patent rights in the MDM6610 Qualcomm chip and other Qualcomm components licensed under Motorola patents are exhausted outside of Germany, Motorola will continue to wrongfully threaten actions for infringement against Apple's iPhone 4S, its new iPad, and other Apple products based on the use of Qualcomm components, and thereby cause Apple irreparable harm and injury.  The object of this litigation—Apple's ability to continue selling the iPhone 4S, the new iPad, and other Apple products worldwide— exceeds $75,000 in value to Apple.

69.     Motorola's patent rights in the MDM6610 Qualcomm chip and other Qualcomm components licensed under Motorola patents are exhausted outside of Germany, and Apple is entitled to a declaration to that effect.

70.     This is an exceptional case entitling Apple to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNT FOUR

### (PERMANENT EQUITABLE INJUNCTION)

71.     Apple incorporates paragraphs 1-70 as if fully set forth herein.

72.     Apple will incur irreparable harm if Motorola is not enjoined from initiating litigation outside of this Court and outside of Germany alleging that Apple infringes its patents by virtue of incorporating Qualcomm chips.  This harm will include the loss of a volume of sales that

FIRST AMENDED COMPLAINT;
CASE NO. 3:12CV00355 JLS (BLM)

cannot be quantified with specificity, as well as a loss of consumer goodwill, negative publicity, damage to relationships with distributors and resellers, and with current owners of the iPhone 4S, the new iPad, and other Apple products.

73.     Apple is likely to succeed on the merits of its breach of contract and declaratory judgment claims.  First, Apple is likely to show that Motorola's threats and pursuit of litigation alleging infringement by Apple by virtue of incorporating Qualcomm components breaches Motorola's contract with Qualcomm to which Apple is a third-party beneficiary.  Second, Apple is likely to show that it is a third party beneficiary to the licenses between Qualcomm and Motorola and is therefore authorized to use Qualcomm components licensed under Motorola patents.  Third, Apple is also likely to establish that Motorola's patent rights in the Qualcomm MDM6610 chip and other Qualcomm components licensed under Motorola patents are exhausted.  Apple is therefore likely to succeed on the merits of its claims that the iPhone 4S, the new iPad, and other Apple products do not infringe Motorola's declared standards-essential patents.

74.     The public interest and balance of equities further favor the issuance of an injunction.  Motorola's continued threats to sue Apple for Apple's use of Qualcomm components outside of this Court and outside of Germany frustrates the law and policy of the United States with respect to patent license and patent exhaustion.  The public interest as well as the balance of harms favor Apple's request for an injunction.

75.     Apple is therefore entitled to an order permanently enjoining Motorola from initiating or continuing to prosecute litigation outside of this Court and outside of Germany alleging that Apple infringes its patents by virtue of incorporating Qualcomm chips into its products.

### V.     PRAYER FOR RELIEF

WHEREFORE, Apple respectfully requests that this Court enter the following relief against Motorola:

A.     Judgment in favor of Apple and against Motorola;

B.     A declaratory judgment that Apple, as a third party beneficiary to the

FIRST AMENDED COMPLAINT;
CASE No. 3:12cv00355 JLS (BLM)

Motorola/Qualcomm license agreement, is licensed to use the Qualcomm MDM6610 chip and other Qualcomm components licensed under Motorola's patents in Apple products outside of the Federal Republic of Germany;

C.    A declaratory judgment that Motorola's patent rights in the Qualcomm MDM6610 chip and other Qualcomm components licensed under Motorola patents are exhausted outside of the Federal Republic of Germany;

D.    Permanent injunctive relief restraining Motorola and its subsidiaries, affiliates, officers, directors, agents, employees, servants, licensors, successors, assigns, and all those acting in concert with them, from prosecuting patent infringement proceedings against Apple based on Apple's use of the Qualcomm MDM6610 chip and other Qualcomm components licensed under Motorola patents in any forum outside of this Court and outside of the Federal Republic of Germany;

E.    A judgment awarding Apple all available damages for its breach of contract claim with the exception of damages for Motorola's breach of contract by virtue of suing Apple in the Federal Republic of Germany;

F.    An order ordering Motorola to specifically perform its contractual covenant not to sue Apple based on Apple's use of Qualcomm components outside of the Federal Republic of Germany;

G.    An order granting Apple its attorneys' fees and costs;

H.    Such further relief as this Court may deem proper in law or equity.

Dated:  April 2, 2012                    Respectfully submitted,

*/s/ Robert D. Fram*
Robert D. Fram
rfram@cov.com
COVINGTON & BURLING LLP
One Front Street,
San Francisco, CA 94111-5356

Attorneys for Plaintiffs,
APPLE INC. AND APPLE SALES
INTERNATIONAL

FIRST AMENDED COMPLAINT;
CASE NO. 3:12CV00355 JLS (BLM)

## CERTIFICATE OF SERVICE

I, Monika Kapuscinska, declare as follows:

I am employed with the law firm of Covington & Burling LLP, whose address is 9191 Towne Centre Drive, Suite 600, San Diego, CA 92122. I am over the age of eighteen and not a party to this action.

I hereby certify that on April 2, 2012, the following document:

**PUBLIC-REDACTED VERSION OF FIRST AMENDED COMPLAINT**

was filed and served via the Court's ECF system upon:

Peter E. Perkowski
pperkowski@winston.com
Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071

Peter Chassman
pchassman@winston.com
Winston & Strawn LLP
1111 Louisiana Street, 25th Floor
Houston , TX 77002-5248

James F. Hurst
jhurst@winston.com
Michael L. Brody
mbrody@winston.com
Winston & Strawn LLP
35 West Wacker Drive
Chicago , IL 60601

I declare under penalty of perjury under the laws of United States that the foregoing is true and correct and that this proof of service was executed on April 2, 2012 at San Diego, California.

*Monika Kapuscinska*
Monika Kapuscinska
Paralegal

CERTIFICATE OF SERVICE;
CASE NO. 3:12cv00355 JLS (BLM)